Wanamaker, J.
This is an original action in mandamus, of which the very able brief of counsel for the relator advises us as follows:
“This is a suit brought on the relation of D. C. Keller, president of the Cincinnati Chamber of Commerce, to require the Tax Commission of Ohio to furnish the budget forms required by the provisions of the Act of April 30, 1923, entitled ‘An act to revise and codify the laws relating to the levy of taxes, and the issue of bonds by taxing subdivisions, and to establish a budget system for local expenditure.’ The Tax Commission contends that said act is not in effect because it is subject to a referendum, and referendum petitions were filed within 90 days after the passage of the act. The principal question involved in this suit, therefore, is whether the act is subject to referendum or not. The contention of the relator is that the act is a ‘law providing for tax levies,’ which is expressly excepted from the operation of the referendum by Article II, Section Id, of the Constitution.”
This clearly and concisely expresses the one single issue in this case. By Section lc, Article II, the people’s right of referendum was declared and guaranteed by the constitutional amendment of 1912. The particular part of that article in point is:
*465 “No law passed by the General Assembly shall go into effect until ninety days after it shall have been filed by the Governor in the office of the secretary of state, except as herein provided. When a petition, signed by six per centum of the electors of the state and verified as herein provided, shall have been filed * * * the secretary of state shall submit to the electors of the state for their approval or rejection such law * * * at the next succeeding regular or general election. * * *”
The language, “except as herein provided,” evidently relates to the following portion of Section Id, Article II:
“Laws providing for tax levies, appropriations for the current expenses of the state government and state institutions, and emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect.”
We have therefore a general policy of power reposed in the people to approve or disapprove, to adopt or reject, by referendum, any law or section of law passed by the General Assembly of Ohio, with these.three particular exceptions:
(1) “Laws providing for tax levies.”
(2) Laws providing for “appropriations for the current expenses of the state government and state institutions.”
(3) “Emergency laws necessary for the immediate preservation of the public peace, health or safety.”
If, now, the Taft Act, in question here, is not subject to the referendum, all parties agree that it is *466 by reason of the fact that the act is one “providing for tax levies.”
The brief for the relator suggests the application of the doctrine announced in the concurring opinion in the case of State, ex rel. Greenlund, v. Fulton, 99 Ohio St., 168, at page 200, 124 N. E., 172, at page 181, which is as follows:
“This is the simple language of the plain people and it is to receive such meaning as they usually give to it in political discussions and arguments.”
This doctrine we heartily approve and adopt. What is the “meaning” that the people “usually give” to the expression “provide for tax levies,” as used in “political discussions and arguments”?
Where the language is plain there is neither room nor right to construe. The court’s sole duty is to apply it to the facts found. If, however, there be any doubt about it, the context of the language in which these words are used will remove such doubt.
This section of the Constitution relates to the exercise of a state power, and therefore the only tax levy in the mind of the Constitution makers was a state tax levy. It is unbelievable that the Constitution makers ever thought of mere local levies in this connection, levies that are made, not by the state, but by the local authorities. Any such doctrine would be diametrically opposed to all our past practice, and clearly un-American. The state passes laws “providing” for tax levies for the state. The local political subdivisions pass laws, known as resolutions, or ordinances, “providing” for tax levies in their respective subdivisions.
Now, the title of this act, quoted in the relator’s brief, is very pertinent here:
*467 “An act to revise and codify the laws relating to the levy of taxes and the issue of bonds by taxing subdivisions, and to establish a budget system for local expenditure.”
It is the contention that the words, “laws relating to the levy of taxes, ’ ’ are substantially the same as “laws providing for the levy of taxes,” but it is self-evident that the word “relating,” and its synonyms, “pertaining to” or “concerning,” are much broader, much more comprehensive, than the word “provide,” and are so used in common conversation. A law “relating to the levy of taxes” might merely create a new public purpose for taxes, might change the body that would be authorized to make such a levy, or might change the rates which such body might impose when actually making the levy; but it would be a strange and strained contention to hold that any such act “provided for the tax levy.”
But there is another rule that would forbid liberal extension of the words “providing for tax levies” to such extent and degree as contended for by relator, and that is the well-known rule pertaining to exceptions to a general law or class. The rule is well and wisely settled that exceptions to a general law must be strictly construed. They are not favored in law, and the presumption is that what is not clearly excluded from the operation of the law is clearly included in the operation of the law.
In view of the great precaution taken by the constitutional convention of 1912 to set forth and safeguard, with the particularity of detail usually found only in legislative acts, the right of referendum, and the three exceptions thereto, our court should not *468 deny the people that right, unless the act in ques-ion is plainly and persuasively included within one of the three classes excepted from the operation of the referendum.
This constitutional language, “providing for tax levies,” has been before this court in two other cases, which will be briefly reviewed, so far as pertinent.
In 1913 there was heard and determined in this court the case of State, ex rel. Schreiber, v. Milroy, 88 Ohio St., 301, 102 N. E., 959. It involved Sections 5649-2 and 5649-36, General Code, which were claimed by the relator to be “a law providing for tax levies” and therefore in no wise subject to the referendum.
The court delivered a per curiam opinion, which, under our practice, is concurred in by all the judges concurring in the judgment, as follows: Shauck, C. J., Johnson, Donahue, Wanamaker, Newman and Wilkin, JJ. In that per curiam the following language appears:
‘‘The General Assembly, did not, in this act, impose a tax, stating, distinctly the object of the same, nor did it fix the amount or the percentage of value to, be levied, nor did it designate persons or property against whom a levy was to be made. It merely imposed certain limitations and created an agency. The act cannot be said to be one ‘providing for tax levies,’ within the meaning of those words as used in Section Id of Article II of the Constitution. It is, therefore, clearly subject to the referendum. * * *”
Now it so happens that the sections directly involved in the Milroy case, thus characterized, are *469 almost identical with the sections of the Taft Act, except that the Taft Act is much broader in its scope and comprehends many additional sections and items outside of the description used in the Milroy case.
The doctrine here is clearly that, though the law may “relate” or “pertain” or “limit” tax levies, it must, to come within the constitutional exception, “provide for a tax levy,” and therefore be self-executing. No one contends that this law is self-executing. It merely confers power for others to act. No levy is actually made and no contention is made to that effect.
This same constitutional language was again before this court in 1914 in the hearing and determination of State, ex rel, Donahey, v. Roose, 90 Ohio St., 345, 107 N. E., 760. All that was said in that case that was in any wise pertinent is found in the first paragraph of the syllabus and in a brief reference in the opinion of Donahue, j. The first paragraph of the syllabus is:
“Section 1 of the Act of April 8,1913, as amended April 16, 1913 (103 O. L., 863), is a law providing for a tax levy, and, by the provisions of Section Id of Article II of the Constitution, is expressly exempted from the referendum provisions of Section lc of Article II of the Constitution of Ohio.”
In the opinion (90 Ohio St., 349, 107 N. E., 751) the following language appears:
“While perhaps some of the sections of this act may have been subject to the referendum provisions of Section lc of Article II of the Constitution, yet Section Id of Article II expressly exempts laws providing for tax levies from the operation of the *470 preceding provision of the Constitution. Therefore Section 1 of this act, providing for a tax levy of one-half of one mill on all taxable property within the state, went into immediate operation when approved and signed by the Governor.”
Throughout these cases it is quite apparent that the court, and all its members, contemplated an actual levy of a tax upon certain property, or classes of property, throughout the state, as essential to exemption from the referendum provision of the Constitution; and where those sections of the law only “related” to taxes, the body that should levy, their power or limitation of power, or any other detail as to taxes, they were clearly not included within the language “providing for tax levies.”
The kind of laws contemplated in this first exception to the general constitutional right of referendum, “laws providing for tax levies,” is obviously such as comprehended within Article XII of the Constitution, headed “Finance and Taxation,” which article relates primarily to the taxing power. Special attention is directed to Section 5 of Article XII, as follows:
“No tax shall be levied except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.”
You cannot have a law “providing for tax levies,” except its public purpose be stated; but, in addition thereto, such law must state the property subject to the tax, the rate of tax, the time when such tax is payable, and other elementary essentials of a taxation law. The Taft Act complies with none of these. It is simply a new scheme and a new agency *471 created for levying taxes and enlarging the power and rate of levy, so far as they relate to the referendum article.
Something has been said that certain sections of the act are admittedly subject to the referendum, but that the act as a whole is not subject to the referendum, because certain sections do “provide for tax levies,” and those sections save the entire act from being submitted as a whole to a referendum.
If there were any sections of the Taft Act actually “providing for a tax levy,” then we would agree with this contention; but under Article XII, and its various sections “providing for tax levies,” this phrase is synonymous with “making tax levies,” and no claim of that character is made in behalf of the Taft Act. The plain language of the constitutional section in question, together with the strict rule of construction and application, is conclusive. There can be no doubt that the Taft Act is not a law “providing for tax levies.” It would be exceedingly difficult to use any plainer phrase than the one in question. Some things are so clear they do not admit of further definition.

Writ denied.

Marshall, C. J., Day and Allen, JJ., concur.
Robinson and Matthias, JJ., dissent.
Jones, J., took no part in the consideration or decision of the case.